IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JENNIFER M.,[1]

             Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

             Defendant.

No. 3:23-cv-00706-YY

OPINION & ORDER

YOU, Magistrate Judge.

Plaintiff Jennifer M. seeks judicial review of the Social Security Commissioner's final decision denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). 42 U.S.C. §§ 401–33. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

## PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on April 27, 2021, and for Widow's Insurance Benefits on November 1, 2021, alleging a disability onset date of September 1, 2016. Tr. 210-16. The Commissioner denied plaintiff's claim on January 31, 2022, and again upon reconsideration on March 28, 2022. Tr. 102-08. Plaintiff filed a written request for a

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

hearing, and a hearing was held before Administrative Law Judge Paula Martin on November 2, 2022. Tr. 33–61. The ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 15–32. The Appeals Council denied plaintiff's request for review on April 3, 2023. Tr. 1–7. Thus, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and " 'may not affirm simply by isolating a specific quantum of supporting evidence.' " *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999)).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 21. At step two, the ALJ found that plaintiff had the following severe, medically determinable impairments: diffuse arthralgias, irritable bowel syndrome, migraines, fibromyalgia, anxiety, and depression. Tr. 21. At step three, the ALJ found no impairment met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 21. The ALJ assessed plaintiff's residual functional capacity ("RFC"), as follows:

> [C]laimant has the residual functional capacity to perform light work…except she can occasionally climb ladder, ropes, or scaffolds. She can frequently climb ramps and stairs, stoop, kneel, crouch, and crawl and frequently balance as defined in the Selected Characteristics of Occupations. She can tolerate moderate noise level intensity. She can understand, remember and carry out detailed but not complex instructions, can deal with occasional changes in a routine work setting and can use judgment to make simple work- related decisions. She cannot perform work requiring a specific production rate (such as assembly line work). She is able to tolerate frequent contact with supervisors and occasional contact with co-workers and the general public.

Tr. 22-23.

At step four, the ALJ determined that plaintiff was unable to perform any past relevant work. Tr. 26. At step five, the ALJ determined that transferability of job skills was "not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is not disabled whether or not [she] has transferable job skills." Tr. 27. The ALJ further found that considering plaintiff's age, education, work experience, and

residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as cleaner, small products assembler I, and garment folder. Tr. 27. The ALJ therefore found that plaintiff was not disabled. Tr. 28.

## DISCUSSION

Plaintiff argues that the ALJ (1) failed to give clear and convincing reasons to reject her subjective symptom testimony, and (2) failed to properly evaluate the opinion of social worker Joseph Talik. Pl.'s Br. 1, ECF 10.

**I.  Subjective Symptom Testimony**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms alleged, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). The ALJ need not "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). But Ninth Circuit law "plainly requires" that an ALJ do more than "offer[ ] non-specific conclusions that [the claimant's] testimony [is] inconsistent with [certain evidence]." *Id.* (citations omitted). If the "ALJ's

credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4

At the hearing, plaintiff testified about how her anxiety, IBS, and migraines affect her ability to work. Plaintiff shared that, between 2016 and 2019, she suffered migraines three to four times a week. Tr. 45. When dealing with migraine symptoms, plaintiff would either "take medicine and push through" or "have to just go lay down in a quiet dark room." Tr. 45. When plaintiff was unable to "push through," which was "at least twice a week," she was unable to resume regular activities for "probably 8 to 12 hours" due to the migraine symptoms. Tr. 45-46. Plaintiff also described limitations she suffered from her IBS. During the relevant period, plaintiff shared that she had three- to four-day bouts of diarrhea "like weekly" that required using the restroom "at least three or four times a day." Tr. 44-45. Plaintiff further described that from 2016 to 2019 she suffered panic attacks at work three or more times a week due to stress. Tr. 40-

5 – OPINION & ORDER

42. She shared that the attacks stayed the same even after she left her job in 2019, and that her stress and anxiety often brought on her migraine and IBS symptoms. Tr. 40-42, 280-81.

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 23. However, the ALJ concluded that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 23. Specifically, the ALJ found plaintiff's symptom allegations lacked support from any objective medical evidence in the record, that plaintiff's symptoms improved with treatment, and that plaintiff's daily activities conflicted with her symptom allegations. Tr. 23.

A. **Objective Medical Evidence**

The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original); s*ee also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). A claimant's failure to report symptoms to providers is another valid basis to find the claimant's symptom allegations unreliable. *Greger v. Barnhart*, 464 F.3d 968, 972-73 (9th Cir. 2006). The lack of objective medical evidence is insufficient, by itself, to justify discounting a claimant's testimony. *See, e.g., Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL

5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chafer*, 157 F.3d 715, 722 (9th Cir. 1998) ("the Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence."). When coupled with other permissible reasons, however, lack of objective medical evidence to support a claimant's allegations may be used to discount a claimant's testimony. *Batson*, 359 F.3d at 1197–98.

    The ALJ reasonably discounted plaintiff's allegations about her IBS and anxiety as inconsistent with the record, or simply not affecting plaintiff's ability to work. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). At the hearing, plaintiff testified that her IBS caused her to have cycles of diarrhea and constipation, and to frequently need to use the restroom. Tr. 44-45. Plaintiff further emphasized that she had panic attacks three or more times a week due to stress, and that her stress and anxiety exacerbated her IBS symptoms. Tr. 40-42, 280-81. As an initial matter, it is not clear that the ALJ discounted plaintiff's IBS testimony at all: three to four bathroom breaks per day (sometimes brought on by stress or anxiety) are not incompatible with the reduced range of light work the ALJ formulated in the RFC. *See* 20 C.F.R. § 404.1567(b); Tr. 22-23. Nor did plaintiff's counsel question the vocational expert at the hearing about how bathroom breaks or IBS would affect plaintiff's ability to work.[2] Even if this testimony does conflict with the RFC, the ALJ reasonably noted that plaintiff's IBS had not been

---

[2] VE testimony varies on this issue from case to case, but plaintiff does not identify (nor could the court find on its own initiative) cases where a VE testified that "three to four" bathroom breaks a day precluded the reduced range of light work the ALJ proposed here. *See, e.g., Nicole S. v. Kijakazi,* No. 2:22-cv-06655-HDV (ADS), 2023 WL 9107289, at *1 (C.D. Cal. Dec. 28, 2023) (adopting VE testimony that employers would tolerate a worker being off task, including for bathroom breaks, for "six minutes an hour" or twelve minutes in a "two-hour block).

7 – OPINION & ORDER

severe enough to cause her weight to fluctuate, and that it had "not been a focus of treatment" in the medical records, suggesting it was not as severe as alleged. Tr. 25. Likewise, in contrast to plaintiff's testimony about suffering three or more panic attacks a week, the ALJ noted that the medical record showed plaintiff's anxiety and stress had been fairly stable from 2018 to 2019, Tr. 453, and that in 2019, her anxiety symptoms had been "much improved." Tr. 623. Given plaintiff's IBS testimony aligns with the RFC, and the ALJ reasonably discounted any more severe limitations from IBS or anxiety in the decision, the ALJ did not err.

The ALJ also reasonably discounted plaintiff's migraine testimony for lack of supporting evidence in the medical record. As indicated above, lack of supporting evidence cannot be the *sole* reason for an ALJ to discount a plaintiff's symptom testimony, but it is a relevant consideration. *Batson*, 359 F.3d at 1197–98. The ALJ rejected plaintiff's testimony that she suffered migraines three to four times a week, with symptoms lasting up to twelve hours, Tr. 45, because the record did not bear those allegations out. Tr. 25. For example, the ALJ noted that there are no medical records during the relevant period indicating that plaintiff suffered from migraines. Tr. 25. The first mention of migraines in the medical record is an October 2019 appointment where plaintiff's doctor indicated migraines had not been discussed previously. Tr. 25 (citing Tr. 614). And plaintiff does not identify any medical evidence of migraines the ALJ somehow missed or which supports her testimony. *See* Pl. Br., ECF 10. Without any supporting medical evidence to go on, the ALJ reasonably deduced that plaintiff had overstated the extent of the limitations caused by her migraines.

### B.     Improvement with Treatment

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161

(9th Cir. 2008). If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of ... symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Ninth Circuit has held that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).

The ALJ reasonably concluded that plaintiff's IBS, migraines, and anxiety improved with treatment, which undermined her hearing testimony concerning the severity of those symptoms. Although plaintiff complained that she was unable to work in part due to her IBS, she was prescribed Dicyclomine for diarrhea and cramps in 2019, and showed "much improvement" on that medication by September 2019. Tr. 614, 623. The ALJ likewise noted that plaintiff reported medication "helps a lot" with her anxiety and panic attacks. Tr. 23-24, 1204-1205. Her doctors also highlighted that her anxiety "symptoms much improved" with medication treatment. Tr. 623 (noting no headache, no diarrhea), 1074, 1100 (same). Concerning plaintiff's migraines, the ALJ noted that plaintiff was prescribed medication, no further neurology appointments were scheduled, and there was "no mention of migraines" in subsequent appointments. Tr. 25 (citing Tr. 1219). In all, plaintiff demonstrated marked improvement in IBS, anxiety, and migraine symptoms with medication, and this was another clear and convincing reason for the ALJ to rely upon to discount plaintiff's more severe subjective complaints about the limitations these issues caused.

    C.    **Daily Activities**

The ALJ also discounted plaintiff's subjective symptom testimony because it was inconsistent with her daily activities. Tr. 23. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the

activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has found that activities such as using public transportation, shopping, preparing meals, performing household chores, performing personal care, socializing with friends, and watching television and playing video games for sustained periods may undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021).

      The ALJ reasonably concluded that several of plaintiff's daily activities conflicted with her testimony about her migraines, IBS, and anxiety. The ALJ contrasted plaintiff's testimony about her anxiety (*see, e.g.,* Tr. 280-81) with evidence that, shortly after her alleged onset date, she traveled to Georgia to paint a mural at her sister's restaurant, and noted that plaintiff attended college with some accommodations, shopped at the grocery store, went to the gym three times a week, and attended groups. Tr. 23-24 (citing Tr. 53-54, 270-277, 668-670, 709, 819, 836, 952). The ALJ likewise relied upon the fact that plaintiff's physical capabilities conflicted with her testimony about her migraines. For example, the ALJ observed that by April 2017, plaintiff was going to the gym 3 times per week and regularly walked 3-20 miles a day. Tr. 23-25, 660-661, 668, 670, 690, 722, 736, 836, 933. The ALJ noted that plaintiff's ability to hike, care for pets, handle her finances, and perform other household chores further undermined her testimony. Tr. 21-26, 270-277. This was another clear and convincing reason for the ALJ to rely upon to discount plaintiff's testimony about the extent of her physical and mental health issues.[3]

---

[3] Plaintiff does not raise the ALJ's decision to discount her daughter's lay witness testimony as one of the "issues" she challenges, but mentions the ALJ's alleged error in considering this testimony throughout her brief. *See* Pl. Br. 1, 7-8. The ALJ must give reasons

## II. Medical Opinion Evidence

When evaluating medical opinion evidence for claims filed on or after March 27, 2017, ALJs must apply 20 C.F.R. § 404.1520c for Title II claims and 20 C.F.R. § 416.920c for Title XVI claims Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

---

"germane to the witness" when discounting the testimony of lay witnesses. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).Where lay witness testimony does not describe any limitations not already described by the claimant, the ALJ's well-supported reasons for rejecting the claimant's testimony "apply equally well to the lay witness testimony." *Molina*, 674 F.3d at 1117, 1122. The ALJ provided germane reasons to discount plaintiff's daughter's testimony, which track her supportable reasons to discount plaintiff's similar allegations. Tr. 25. The court therefore finds no error in the ALJ's treatment of plaintiff's daughter's testimony.

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone W.*, 2020 WL 6363839 at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

### A.    MSW, LICSW Joseph Talik

Social worker Joseph Talik began seeing plaintiff in July 2019, when plaintiff started attending bi-weekly counseling sessions at the Portland Veterans Center. Tr. 378. There are no treatment notes from Talik in the record, but he did provide a letter and a function report at the request of plaintiff's counsel in connection with plaintiff's disability case. *See* Tr. 1223-26. In his

letter, Talik opined that plaintiff has "not been able to be gainfully employed since before she began readjustment counseling" in July 2019. Tr. 378. In his function report, Talik offered the opinions that plaintiff suffered "extreme" limitations in her concentration, ability to interact with others, ability to adapt or manage herself, and ability to understand, remember, or apply information. Tr. 1225-26. The ALJ found Talik's opinions unpersuasive because they were not supported by findings and were inconsistent with other medical evidence in the record. Tr. 26.

First, the ALJ sufficiently evaluated the supportability of Talik's opinions by concluding there was a total lack of record evidence to back up his opinions. The supportability factor requires the ALJ to evaluate the relevant objective medical evidence—that is, clinical signs and diagnostic findings, *see* 20 C.F.R. §§ 404.1502(c), (f), (g)—and the supporting explanations a medical source provides for an opinion. 20 C.F.R. § 404.1520c(c)(1). Lack of objective medical evidence is a sufficient reason to reject a medical opinion if it is "brief, conclusory, and inadequately supported by clinical findings." *Ford v. Saul,* 950 F.3d 1141, 1154 (9th Cir. 2020).

The ALJ dismissed Talik's opinions that plaintiff had "extreme" limitations because Talik's opinions were "not supported by findings." Tr. 26. Plaintiff makes a process argument about supportability, but does not meaningfully dispute the substance of the ALJ's finding that Talik's opinions are "not supported by findings," or suggest that there was any medical evidence the ALJ overlooked when assessing Talik's opinions. *See* Pl. Br. at 19-20. Plaintiff specifically faults the ALJ for failing to provide "examples of inconsistency with Mr. Talik's clinical findings that undermined the supportability of his determination." *Id.* But, for supportability, an ALJ looks only at the evidence a medical source provides within the medical source's own opinion, not extrinsic evidence. *See* 20 C.F.R. § 404.1520c(c)(1). Here, the ALJ reasonably concluded Talik's opinions were unpersuasive because there were *no* findings that supported his

opinion, and therefore no "examples" or evidence for the ALJ to cite. On this record, therefore, the ALJ fully considered the supportability of Talik's opinion.[4] The ALJ adequately evaluated Talik's opinions for supportability, and the ALJ's decision finding those opinions unpersuasive is supported by substantial evidence. 20 C.F.R. §§ 404.1502c.

The ALJ also sufficiently considered the consistency of Talik's opinions with other record evidence. An opinion's persuasiveness is a function of its consistency with "evidence from other medical sources and nonmedical sources in the claim," which the ALJ must consider when evaluating medical opinions. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *Woods*, 32 F.4th at 792. The ALJ reasonably concluded that Talik's opinions about "extreme" limitations on plaintiff's ability to concentrate, remember, and adapt conflicted with evidence of "intact attention, concentration, insight and judgment" on several mental status examinations during the relevant period. Tr. 26 (citing Tr. 662, 670, 711, 756). The ALJ further noted that Talik's opinions stood in contrast to the persuasive opinions of state agency consultants who found

---

[4] Defendant argues this court could affirm even if the ALJ did not address supportability at all. Def. Br. 9, ECF 12 (suggesting the "ALJ is required to articulate findings regarding only supportability and/*or* consistency…" and citing *Allen v. Kijakazi*, 2023 WL 2728857, at *1 (9th Cir. Mar. 31, 2023), for the proposition that "the ALJ may find an opinion unpersuasive if either of the prongs are found to be unsupported by substantial evidence") (emphasis added). And defendant addresses supportability only with the impermissible *post hoc* observation that Talik's opinion is "little more than a check the box form," which defendant acknowledges was "not specifically addressed by the ALJ." *Id; Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

To be clear, ALJs must address both supportability and consistency. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *Woods*, 32 F.4th at 792. It is incorrect to cite *Allen* to suggest otherwise. In *Allen*, the Ninth Circuit acknowledged that the ALJ considered both factors "as required," and simply noted that an ALJ can reject a medical opinion if it is wanting on either front. 2023 WL 2728857 at *1. That is to say, an ALJ must *consider* both supportability and consistency in the first instance, even if the ALJ may reject the opinion for lack of either one. This is true not only because regulations and Ninth Circuit precedent say so, but also for the intuitive reason that both factors are crucial to determining whether a medical opinion is persuasive. If, for example, a doctor's opinion has support in the doctor's own notes but is inconsistent with a mountain of other persuasive evidence in the record, an ALJ cannot very well consider supportability alone, affirm on the basis of the doctor's opinion, and cite *Allen*.

14 – OPINION & ORDER

plaintiff capable of light exertion and able to understand, remember, and carry out simple, but not detailed instructions. Tr. 26 (citing Tr. 63-90, 93-101). The ALJ reasonably adopted these other opinions as well-supported by the record, and plaintiff does not challenge the ALJ's finding in this regard. Tr. 26. The ALJ sufficiently addressed the consistency factor by citing this evidence, and ultimately supported the decision to discount Talik's opinions with substantial evidence.

## CONCLUSION

For the reasons given above, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED March 12, 2024.

                                    /s/ Youlee Yim You
                                    Youlee Yim You
                                    United States Magistrate Judge